UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIATEUR COMMEREE,<br>    Plaintiff,<br><br>    v.<br><br>ALAN HANTMAN, Architect of the<br>    Capitol,<br>PEGGY LAMBERT TYLER,<br>JANIS JOHNSON,<br>DIANE DeCANIO,<br>KATHLEEN GAUSE,<br>LAWRENCE STOFFEL,<br>JERRY SHAW,<br>CHARLES TYLER,<br>HECTOR SUAREZ,<br>JAMES MILLER,<br>ANN FITZGERALD,<br>JUANITA CASTRO,<br>    Defendants. | Civ. No. 97-0242 (TFH) #29<br>Civ. No. 97-1632 (TFH) #30<br>Civ. No. 97-2398 (TFH) #27<br>Civ. No. 98-1875 (TFH) #62<br><br>OCT 29 1999 |

## MEMORANDUM OPINION

Pending before this Court are defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff Viateur Commeree has filed four complaints, the first three of which have been consolidated. In response, defendants have filed one consolidated motion to dismiss the consolidated complaints and a second motion to dismiss the fourth complaint. Because the factual allegations and legal issues are sufficiently similar in all four complaints, both motions will be addressed in this Memorandum Opinion. Due to Mr. Commeree's failure to establish a prima facie case of discrimination or constitutional violation in any of the complaints, the Court will grant defendant's motions.

## I. BACKGROUND

Consistent with the standard for motions to dismiss, the Court assumes the facts pleaded as true.[1] See Moore v. Aspin, 916 F.Supp. 32, 34 (D.D.C. 1996). Commeree asserts multiple constitutional and employment discrimination counts which include allegations that defendants violated the Americans With Disabilities Act ("ADA"), retaliated against him for requesting reasonable accommodations under the ADA, and violated his rights of Due Process and Equal Protection guaranteed by the 5th Amendment and various District of Columbia laws. Throughout his extensive and complicated history with his employer, the Architect of the Capitol ("AOC"), Commeree officially held the position of Assistant Head of the Inventory Management Division ("IMD") of the Senate Office Buildings of the Office of the AOC. The AOC employed Commeree in this position from December 1989 until his termination in August of 1997. On two occasions, however, from December 1993 to November 1994 and again from July 1995 until his termination, Commeree was detailed to the Furniture Division of the Senate Office Buildings after receiving official reprimands for inappropriate conduct. His position in the Furniture Division entailed fewer responsibilities but no decrease in grade or pay.

In February 1995, after being diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), Commeree advised the Equal Employment Opportunity Office of his disability and requested reasonable accommodations. Commeree's request included a private office or non-distracting workplace, checklists of multistaged tasks, all instructions given in writing or by e-mail, intermediate deadlines, a single supervisor to assign work and assistance in setting up a

---

[1] In a number of instances the factual allegations in plaintiff's pleadings are inconsistent with each other. In such instances, the Court has taken the facts most favorable to the plaintiff.

time management system.

In July of 1995, the AOC sent Commeree a "personnel action letter" which denied his request for reasonable accommodations and proposed three alternatives: (1) returning to the position of Assistant Head of IMD without accommodations and with a warning that failure to perform the essential functions of the position would result in termination; (2) applying for disability retirement; or (3) accepting the position of service clerk with a substantial reduction in pay. Commeree refused to accept any of those options, and, considering such a response unlawful, filed a formal complaint for redress from unlawful employment practices with the Office of Compliance later that May. Due to the stress of his negotiations with AOC, and pursuant to medical orders, Commeree requested and took six weeks of advanced sick leave. Commeree received the "Final Agency Decision" of the AOC in December of 1996 denying his request for reasonable accommodations and again offering him the three options. On January 28, 1997, Commeree received a termination letter that cited his "medical inability to perform the essential functions of your position with or without accommodation" as a reason for termination. Plaintiff requested and received an administrative hearing on the proposed termination on June 23, 1997. The hearing officer subsequently issued an opinion supporting termination. On February 4, 1997, Commeree filed the instant action.

## II. DISCUSSION

In his Complaints filed on February 4, 1997 (97-0242), July 17, 1997 (97-1632), and October 16, 1997 (97-2398), which were consolidated on July 6, 1998, Commeree alleges

thirteen counts against the defendants[2]: (1) employment and disability discrimination for failure to reasonably accommodate in violation of 2 U.S.C. §1311; (2) employment and disability discrimination for retaliation in violation of 2 U.S.C. §1317; (3) employment and disability discrimination for refusal to approve advanced sick leave in violation of 2 U.S.C. §1311(a)(3); (4) employment and disability discrimination for improper application of discriminatory criteria on request for advanced sick leave; (5) employment and disability discrimination for improper medical inquiries on a request for advanced sick leave; (6) employment and disability discrimination for retaliation in violation of 2 U.S.C. §1317; (7) discrimination based on retaliation in violation of 2 U.S.C. §1317(a); (8) a violation of the Equal Protection Clause of the 5th Amendment to the United States Constitution for failure to make reasonable accommodations; (9) violation of the substantive due process clause of the 5th Amendment for refusing to make reasonable accommodations; (10) violation of the procedural due process guaranteed by the 5th Amendment for failure to make reasonable accommodations; (11) intentional misrepresentation in violation of District of Columbia law; and (12) intentional infliction of emotional distress in violation of District of Columbia law. After careful review of the extensive pleadings, the Court will grant defendants' motion to dismiss based on plaintiff's failure to establish a prima facie case on all counts except the state tort claims. Additionally, the Court will decline to exercise supplemental jurisdiction over the District of Columbia claims and dismiss them without prejudice.

---

[2] The United States government has certified that Peggy Lambert, Janis Johnson, Diane DeCanio, Kathleen Gause, Lawrence Stoffel and Jerry Shaw were acting within the scope of their authority as employees of the United States, thus the United States is substituted for these individually sued defendants for the relevant tort counts.

AO 72A
(Rev 8/82)

## A. Standard of Review

In analyzing a motion to dismiss, this Court must consider the facts presented in the pleadings as true and construe them and all reasonable inferences in the light most favorable to the plaintiff. See Moore v. Aspin, 916 F.Supp. at 32 n.1. The Court need not consider inferences that are unsupported by the facts or legal conclusions framed as facts. See Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C.Cir. 1994). The motion can be granted, and the complaint dismissed, only if no relief could be granted upon those facts. See id.

The pleadings in this case include over fifty supplementary documents submitted by both the plaintiff and the defendant. Federal Rules of Civil Procedure 12(b) requires that a motion to dismiss be considered according to the summary judgment standard if the movants submit matters outside the pleadings that are not excluded by the court.[3] See FED. R. CIV. P. 12(b), 56; see also IMS v. Alvarez, 129 F.3d 618, 619 (D.C. Cir. 1997). Therefore, the Court will disregard all supplemental material submitted with the pleadings, and consider the pleadings on their face.

## B. Employment Discrimination

The Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), articulated the allocation of burdens for an allegation of discriminatory employment practices. Under the McDonnell Douglas framework, a plaintiff bears the initial burden of showing a prima facie case of discrimination. Id. at 802; see also Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C.Cir. 1998). If that burden is met, then it shifts to the defendant to show a legitimate, non-

---

[3] Rule 12(b) mandates that the Court convert the Motions to Dismiss to Motions for Summary Judgment if it considers matters outside the pleadings, and apply the standard articulated in Rule 56, including giving parties reasonable opportunity to present all relevant material. See FED. R. CIV. P. 56; see also Gordon v. National Youth Work Alliance, 675 F.2d 356, 360 (D.C. Cir. 1982).

discriminatory reason for its challenged employment practices. Once that showing is made, the burden shifts back to the plaintiff to demonstrate that the purported legitimate reasons are a pretext for discrimination. Id.; Aka, 156 F.3d at 1288.

### 1. ADA Violations

Commeree alleges that the AOC violated the ADA by refusing to make reasonable accommodations for his disability. The ADA requires that employers make "reasonable accommodations" for an "otherwise qualified individual" with a disability unless the employer can show that such accommodations would cause an undue burden. 42 U.S.C. §12112(b)(5)(A). In order for Commeree to establish a prima facie case under the ADA, he must establish that a reasonable jury could find that: (1) he has a disability within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the position with or without reasonable accommodations; and (3) he was discharged because of his disability. See Swanks v. Washington Metropolitan Area Transit Authority, 179 F.3d 929 (D.C. Cir. 1999).

The AOC concedes that ADHD is a cognizable disability under the ADA. See 2 U.S.C. 1311(a)(3). The AOC maintains, however, that Commeree cannot establish that he is an "otherwise qualified individual" so as to invoke the protections of the ADA. A person is "otherwise qualified" if he can perform the essential functions of his job with or without accommodations. See Southeastern Community College v. Davis, 442 U.S. 397 (1979); 42 U.S.C. §12111(8). Consequently, Commeree must first show that he possesses the skill, experience, education and ability to perform the essential functions of the Assistant Head position, 29 C.F.R. §1630.2(m), and second that he can perform those functions with or without reasonable accommodations. See Kalekiristos, 958 F.Supp. at 660.

The AOC's judgment as to the essential functions of a job, especially if they are

memorialized in job descriptions, are entitled to great deference by this Court. See 42 U.S.C. §12111(8); Reil v. Electronic Data Systems Corp., 99 F.3d 678 (5th Cir. 1996). The AOC's job description for the position of Assistant Head includes many and various supervisory tasks, including directing subordinates, maintaining inventory, advising the Head of the division and acting on personnel matters. Defendants contend that the accommodations deemed necessary for Commeree by his physician foreclose him from performing the essential functions of the position of Assistant Head. The Court agrees, recognizing that the accommodations requested, such as a non-distracting workplace, checklists of multistaged tasks, instructions in written or e-mail form, intermediate deadlines, and a single supervisor from whom to take assignments, would render Commeree unable to perform the essential functions of his position. The requested accommodations put the plaintiff in a position of an employee who needs supervision instead of a supervisor who must exercise independent judgment, interface with his subordinates, and juggle tasks when necessary as required for the Assistant Head position. The AOC is not required to reallocate the essential supervisory functions previously assigned to Commeree in order to accommodate him. See 29 C.F.R.App. §1630.2(o); see also Haysman v. Food Lion, 893 F.Supp. 1092, 1101 (S.D. Ga. 1995). Commeree has refused AOC's offer to return to his position without accommodations, which this Court can only presume demonstrates that he is either unable or unwilling to perform the essential functions of the position without accommodations. Because Commeree has made no showing that he is qualified to perform his job with or without accommodations, he fails to plead a prima facie case of disability discrimination, and his ADA claims will therefore be dismissed.

### 2. Retaliation

Commeree alleges that the AOC violated 2 U.S.C. §1317 by retaliating against him for

filing a complaint with EEO and requesting reasonable accommodations. First, he contends that the "personnel action letter" was retaliatory in that it was an attempt to coerce him into accepting one of three unsatisfactory employment options or face termination. Second, he claims that AOC retaliated against him by delaying approval of his advanced sick leave, applying discriminatory criteria to the request and making improper medical requests for confidential information. The AOC contends that Commeree's only recourse for dissatisfaction with administrative results is a *de novo* review of the merits, and that he seeks to skirt that avenue by framing his dissatisfaction as a claim of retaliation. The Congressional Accountability Act (CAA) under which this claim is brought, however, conveys the protections of the ADA to legislative employees and does contain a civil suit provision. See 2 U.S.C. §1302(3); 2 U.S.C. §1403(a). The Court therefore considers Commeree's claims as properly within its jurisdiction and finds that his administrative remedies have been exhausted.[4] The Court will dismiss his claims, however, for failure to establish a prima facie case of retaliation.

In order to establish a prima facie case of retaliation, Commeree must plead: (1) that he was engaged in a protected activity; (2) that the AOC took adverse action; and (3) that a causal connection existed between the protected activity and his employer's action. See McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984), *aff'd*, 729 F.2d 783 (D.C. Cir. 1984). If this burden is met, the burden shifts to the defendant to show a legitimate, non-retaliatory reason for its actions. Id.

Commeree easily satisfies the first element of his retaliation claim as both filing an administrative complaint and requesting accommodations pursuant to the ADA are federally

---

[4] Commeree properly filed a complaint with the EEO, had a hearing and received "Final Agency Decision."

protected activities. His claim is deficient, however, on the remaining two elements. It is unclear to the Court that the bureaucratic delay in the approval of sick leave can be considered adverse action, as the request was ultimately granted. It is also unclear how the second adverse action alleged by Commeree, the "personnel action letter" issued by the AOC, is adverse considering that it outlined three options, including returning to his job. Construing all inferences in the light most favorable to the plaintiff, however, the Court will accept that a jury could determine AOC's actions to be adverse. This concession notwithstanding, Commeree still fails to establish a prima facie case of retaliation as the pleadings are devoid of any facts to support a causal connection between his protected act and any adverse action by the AOC. Although Commeree alleges "a direct and proximate nexus" between his protected activities and the AOC's actions, Commeree pleads no fact from which the Court could infer such a connection. Bald allegations of a causal connection are not sufficient. See Kowal, 16 F.3d 1271 at 1276 ("[n]or must the court accept legal conclusions cast in the form of factual allegations"). Accordingly, plaintiff's retaliation claims will be dismissed.

**C. Equal Protection**

Commeree alleges that the AOC's refusal to make reasonable accommodations was arbitrary and capricious and bore no relation to a legitimate state interest, and was therefore in violation of the Fifth Amendment's Equal Protection Clause. Constitutional claims brought on behalf of disabled plaintiffs are subject to the rational basis test. See Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985); see also Women Prisoners of the District of Columbia Dept. of Corrections v. District of Columbia, 93 F.3d 910, 924 (D.C.Cir. 1996). In order to even apply this test, however, Commeree must demonstrate that he was treated differently from similarly situated individuals. Women Prisoners of the District of Columbia Dept. of

Corrections, 93 F.3d at 924. Because Commeree fails to plead any fact indicating that AOC treated him differently from a similarly situated class of people, he fails to establish a prima facie case that he was denied the equal protection of the laws. Defendant is therefore entitled to judgment as a matter of law.

### D. Due Process

Commeree also contends that AOC violated his right to the procedural due process guaranteed by the Fifth Amendment because it did not give him proper notice that his request for reasonable accommodations was a ground to "precipitate an adverse action." He further contends that AOC violated his right to substantive due process under the Fifth Amendment by creating an irrebuttable presumption that people with ADHD cannot perform the position of Assistant Head of the IMD.

Under the law of due process, Commeree must first identify a constitutionally protected property or liberty interest. See Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985); see also Brock v. Roadway Express, Inc., 481 U.S. 252 (1987) (holding that determination of whether due process is due precedes a determination of what process is due). Property interests in employment are not generally created by the Constitution, but rather are statutory entitlements. See Loudermill, 470 U.S. at 541; see also Garrow v. Gramm, 856 F.2d 203, 205 (D.C. Cir. 1988). A statute can establish a property right by qualifying the terms of employment by, for instance, mandating that an employee cannot be discharged without cause. The Civil Service Reform Act of 1978 determines the rights of civil servants like Commeree, and distinguishes three categories of government employees: Senior Executive Service, Competitive Service and Excepted Service. Id. at 205. All employees of the AOC, including Commeree, are designated by statute to be part of the Excepted Service. See 5 U.S.C. §2107(7). Employers are

entitled to dismiss members of the Excepted Service without cause, prior notice, a termination hearing or an opportunity to appeal. See Garrow, 856 F.2d at 205.[5] Commeree grounds his statutory grant of a property right in his employment in 5 U.S.C. § 7501 and 5 U.S.C. § 4301, but neither of these statutes covers Excepted Service employees and thus does not convey the property interest Commeree purports to have. Because he fails to establish any property or liberty interest, plaintiff's Due Process claims will be dismissed.

**E. Tort Claims**

Commeree invokes the doctrine of pendent jurisdiction to bring District of Columbia law claims for intentional infliction of emotional distress and intentional misrepresentation. The doctrine of pendent jurisdiction enables a federal court to consider a related state law claim against the same defendant if it has an independent basis for exercising federal jurisdiction and the state and federal claims have a common nucleus of facts. See Women Prisoners of the District of Columbia Department of Corrections, 93 F.3d at 920; see also Prakash v. American University, 727 F.2d 1174, 1182 (D.C. Cir. 1984). Under 28 U.S.C. § 1367(c), a district court may dismiss any claims within its supplemental jurisdiction if it has dismissed those claims over which it has original jurisdiction. 28 U.S.C. § 1367(c); see also National Organization for Women v. Operation Rescue, 37 F.3d 646, 651 (D.C.Cir. 1994). Commeree has failed to establish any claim that arises under the original jurisdiction of this Court and the Court finds no reason to exercise supplemental jurisdiction over the District of Columbia claims. His state claims will therefore be dismissed without prejudice. See United Mine Workers v. Gibbs, 383

---

[5] Despite this absence of procedural requirements, Commeree did receive notice of his proposed termination and a hearing. Indeed, at one point he seems to concede that more procedures were given than required by the Constitution. See Plaintiff's Opposition to Defendant's Motion to Dismiss, p. 35.

U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").

### F. The Fourth Complaint

In Commeree's Fourth complaint, 98-1875,[6] he recasts the constitutional and tort claims as allegations of conspiracy. He alleges that defendants conspired to violate the due process clause to effect wrongful discharge, and conspired to tortiously interfere with plaintiff's employment in violation of District of Columbia law.

First, Commeree alleges that defendants conspired to deprive him of his due process rights and his property interest in employment, as demonstrated by their: (1) failure to give notice of the charges on which the Proposal to Terminate was based; (2) failure to allow favorable witness testimony at his administrative hearing; and (3) permitting an unfair and partial hearing officer to preside over his hearing. Commeree fails to ground his cause of action on any statutory or common law authority,[7] so the Court will presume his reliance on 42 U.S.C. §1983, the provision that establishes a cause of action for deprivations of due process. A similar provision, 42 U.S.C. §1985, gives rise to a cause of action for deprivation of equal protection and

---

[6] Commeree has named eleven defendants in his fourth complaint, ten of whom are named in their individual capacities. They are: Alan Hantman, Charles Tyler, Peggy Lambert Tyler, Hector Suarez, Janis Johnson, Diana DeCanio, James Miller, Ann Fitzgerald, Juanita Castro, Lawrence Stoffel and Jerry Shaw. All defendants are sued in their personal capacity with the exception of Alan Hartman. The government has certified that all of the defendants were acting within the scope of their employment.

[7] Commeree alleges multiple violations of administrative regulations pertaining to the administration of hearings. Such claims, while they may constitute a violation of the Administrative Procedures Act, are not sufficient to establish a due process cause of action absent the showing of a property right.

includes a cause of action for conspiracy to violate equal protection rights. Unlike §1985, however, §1983 provides no cause of action for conspiracy to violate a person's due process rights. See Jennings v. Nester, 217 F.2d 153, 154 (1954), *cert denied*, 349 U.S. 958 (1955); accord Joyce v. Ferrazzi, 323 F.2d 931, 932 (1st Cir. 1963) ("Section 1985(3), supra, by its terms, does not give a cause of action for conspiracy to deny federally guaranteed rights generally, including the right to due process of law"); accord Henson v. City of St. Francis, 322 F. Supp. 1034, 1038 (E.D.Wis. 1971) ("As to the plaintiffs' alleged cause of action under §1985(3), it is noted that such section runs only to conspiracies that result in a denial of the equal protection of the law and does not embrace a denial of due process"). Therefore, Commeree's only available due process cause of action if to show an actual deprivation of due process violation. See Jennings, 217 F.2d at 154. ("[T]he Act creates a cause of action for a conspiracy to deny equal protection but not for a conspiracy to deny due process. There must, of course, be an actual denial of due process before a cause arises"). Because of the Court's prior determination that Commeree has not demonstrated the requisite property right to establish a deprivation of Due Process under the Fifth Amendment, defendants are entitled to judgment as a matter of law.

Second, Commeree has again failed to raise an issue of federal question for this Court to consider and the pendent tort claims will therefore be dismissed without prejudice. See discussion, *infra*, Part II.E.

## III. CONCLUSION

For the reasons stated above, the Court will grant defendants' motions to dismiss. Appropriate Orders will accompany this Memorandum Opinion.

October 28th, 1999

_____
Thomas F. Hogan
United States District Judge

AO 72A
(Rev 8/82)